## Peter J. Like, Respondent, *v.* William J. McKinstry, Appellant.

Slander of personal property; action maintainable for. Question of title to growing crop; how limited. Evidence. Statute of frauds. Malice. Question for jury. Advice of counsel; to overcome presumption of malice in false claim to property.

An action is maintainable for slander of title to property, whether the same be real or personal.

In an action against a party for falsely·and maliciously asserting title to property to the injury of the plaintiff, the court will consider only what is palpably the subject-matter of the controversy, that to which the plaintiff in fact claimed title, and to which, if to any thing, the injury by defendant's adverse claim was done. Hence,

Where the subject-matter of the alleged slander was a growing crop of rye, upon premises of which the plaintiff's lease would expire long before the maturity of the crop, and which the plaintiff had offered for sale, and to which the defendant had publicly claimed title in himself as owner of the premises, etc., — *held*, that it was the matured crop that was the subject of the sale, and not merely the plaintiff's interest or title in the crop to the expiration of his lease, —whence it follows, that it is the plaintiff's title to the matured crop, and not his present and temporary interest or use therein that must be established as against the defendant's claim, in order to maintain the action.

Where a lease of farm premises would expire April 1, 1862, and the lessee, as against the lessor, claims title to a growing crop of rye that will not mature until the summer or fall of that year, and introduces evidence to show, that, in the fall of 1861, the lessor assisted him in preparing the ground for the rye, and encouraged him in sowing the same, and that, as part consideration for the privilege of harvesting the rye, he (the lessee) put into the ground timothy seed for the lessor's benefit, — *held*, that there was evidence, upon which a jury might infer, that the crop, together with the privilege of harvesting the same, belonged to the lessee; and such an arrangement between the parties would not be invalid under the statute of frauds.

The finding, upon evidence like the above, that the crop belonged to the lessee, was equivalent to finding, that the declaration of the lessor, that the crop was his, was untrue, and laid the foundation for an action for damages by the lessee for injuries sustained by reason of such declaration.

In an action for slander of title, the plaintiff must maintain that the language complained of was — 1, false; 2, injurious; 3, malicious.

Although the evidence of malice, in an action for slander of property, be not very strong, if there be evidence tending to such conclusion, it is proper to submit the question to the jury.

The presumption of malice is not overcome by showing, that the defendant acted under the advice of counsel, unless it also appears, that he had truthfully disclosed to his counsel all the material facts within his knowledge; and where it appears, that his statements to his counsel were the same as those made in his testimony on the trial, which were in conflict with other testimony on points within his own personal knowledge, the jury have justification in finding that he did not make a truthful disclosure of all the facts within his knowledge.

*J. C. Newkirk,* for the appellant.

This is an action for slander of plaintiff's title to personal property.

The action was tried in Columbia county, at a Circuit Court, on the 15th day of January, 1863.

The plaintiff hired and occupied a farm of the defendant, in the town of Livingston, Columbia county, for three years, from April 1, 1859, to April 1, 1862, under a hiring from year to year by verbal agreement.

The agreement for the last year from April 1, 1861, to April 1, 1862, was made in March, 1861, and was a parol contract. By this agreement the plaintiff hired the farm of defendant for one year from April 1, 1861. The plaintiff and one witness testified, that, in the agreement of hiring, the plaintiff was to have the privilege of sowing the farm to rye in the fall, and reaping it; the plaintiff to have the use of the barn and press, on the farm, to press the straw of the rye to be sown, and slat-wood off the farm to use in pressing the straw, and the privilege of the barn to thresh the rye in. The defendant testified that it was a hiring for a year from April 1, 1861, and that nothing was said about these privileges.

The plaintiff sowed rye on the farm in the fall of 1861, and in March, 1862, he offered the rye then growing on the farm for sale at public vendue; when the rye was offered for sale the defendant said: "I forbid selling the rye, it is mine;" he did not repeat it, or make any other attempt to prevent the sale. The plaintiff said he would indemnify the purchaser; the rye was then sold and bid off by Peter Shaver for $3.37½ per bushel sowing. There were one hundred and thirteen bushels sown.

Andrew H. Hallenbeck, testified that he heard the defendant forbid the sale; that he was prevented thereby from bidding on the rye, and declined to bid on that account; that he would have bid $3.75 per bushel sowing "with the privilege of pressing the straw with the press, and slat wood from the premises." He also testified that the privilege of threshing, pressing and getting slat wood, would have been worth at least twenty-five cents a bushel — not more.

There is no evidence that any one else was deterred from bidding by the defendant forbidding the sale.

The defendant, before the sale, consulted counsel as to his rights, by whom he was advised to go there on the day of sale and forbid the sale ; that he did no more than forbid the sale and say that the rye was his, and that he believed it was true.

The plaintiff gave evidence that the defendant, on several occasions in the spring of 1862, before the sale, had spoken of the rye as plaintiff's rye.

When the plaintiff rested the case on his part, the defendant moved for a nonsuit, and to dismiss the complaint.

The motion was denied and the defendant duly excepted.

The defendant then introduced evidence.

Upon the testimony being closed, the defendant insisted to the court, that on the whole case, as presented by the evidence, the plaintiff was not entitled to recover, and again moved the court to nonsuit the plaintiff.

The court held otherwise and denied the motion, to which the defendant excepted.

The jury rendered a verdict for the plaintiff for $60. The defendant moved for a new trial on the minutes of the justice, which was denied, and judgment was entered on the verdict.

The defendant appealed from the order denying a new trial, and from the judgment, to the Supreme Court, where the judgment was affirmed.

I. The agreement for the hiring of the farm was made in March, 1861, and the term was to commence April 1, 1861, and to continue for one year.

This agreement as claimed by plaintiff, so far as it provided that the plaintiff should have the right to reap the rye to be sown, to thresh it in the barn on the premises, to use the barn for harvesting the rye, to use the press on the farm to press the straw from this rye, and to get slat wood from the farm was a contract relating to an interest in land, and a contract for the sale of an interest in land, and the agreement, being by parol, and not in writing, is void, and conveyed no right or title to the plaintiff to the growing rye, or these other privileges. (3 R. S. 135, §§ 6, 8.)

1. The lease or term expired April 1, 1862, and the right to reap the rye, etc., was a right to be exercised after the expiration of the year, for which period only a parol lease is good.

2. The agreement that the plaintiff could reap the rye, gather, thresh, etc., on the farm, was an interest in real estate.

It was a contract giving to the plaintiff the right to use the soil, to grow and bring the rye to maturity, and a right of entry on the farm to cut and gather it after the expiration of the year.

This was an interest in the land, and a right to control it for the above purposes to the exclusion of the defendant, or, at least, it affected the defendant in the exclusive use of his land. (Long on Sales, by Rand, p. 80; *Houghtaling* v. *Houghtaling*, 5 Barb. 384; *Mumford* v. *Whitney*, 15 Wend. 392; *Whitmarsh* v. *Cutting*, 10 Johns. 360.)

3. The plaintiff had a valid contract for the use of the farm for one year from April 1, 1861, and no longer; so far as the contract provided for any use of the farm after that time, it is the same as if no such provisions were in the contract.

4. The plaintiff only claimed this right by the agreement made in March, 1861; he does not, in his testimony, claim that any other agreement was made at any time for these privileges; but in his testimony rests his title to the growing crops, and these privileges on the agreement of March, 1861.

5. On the first day of April, 1862, all his rights in law, ceased, and the plaintiff had no right to the growing crops.

6. The stipulations in the agreement that the plaintiff could use the barn and press on the farm and get slat wood from the farm, to harvest the rye and press the straw, were void as being an agreement relating to an interest in lands. The right to use the farm for these purposes would interfere with the defendant's right to the exclusive use of his land.

The right to get or cut slat wood was clearly an interest in real estate. (*Green* v. *Armstrong*, 1 Den. 550.)

II. If the contract of March, 1861, provided that the plaintiff could reap the rye and have the other privileges after April 1, 1862, it was a lease for a term exceeding one year, or was a contract for the leasing of land for a longer period than one year, and therefore void so far as relates to those privileges. (2 R. S. 135, § 8.)

III. If the contract of March, 1861, as to the above privileges is not a contract relating to an interest in lands, or for the sale of an interest in lands, then it was an agreement, which, by its terms, was not to be performed in one year from the making thereof, and, not being in writing, is void so far as relates to reaping the rye and the other privileges above mentioned.

The contract was made in March, and, by its terms, could not be fully performed in less than a year and a half after the making of it. (*Broadwell* v. *Getman*, 2 Denio, 87; *Thomas* v. *Dickinson*, 14 Barb. 90; *Baldwin* v. *Palmer*, 10 N. Y. 232.)

IV. The contract was either a contract relating to an interest in real estate, a leasing for a longer period than one year, or a contract which, by its terms, was not to be performed in one year from the making thereof.

In either case the contract was void, and gave to the plaintiff no right to the growing crops or to the other privileges which he undertook to sell at the vendue, in March, 1862.

V. It cannot be claimed that the agreement to allow the defendant to sow and reap the rye, with the other privileges, was a parol license, and the plaintiff, having acted upon it,

·obtained an irrevocable title to the growing rye and other privileges.

1. The doctrine that a parol license to do an act upon the land of another, which has been acted upon, conveys a title and cannot be revoked, has been overruled, and it is now held, that a parol license conveys no title, and is only a protection for acts done, and may at any time be revoked. (*Houghtaling* v. *Houghtaling*, 5 Barb. 379; *Miller* v. *Auburn & S. R. R. Co.*, 6 Hill, 62; *Mumford* v. *Whiting*, 15 Wend. 381; *Cook* v. *Stearnes*, 11 Mass. 536; *Fentiman* v. *Smith*, 4 East. 108; *Pierrepont* v. *Barnard*, 2 Seld. 279.)

2. A license is founded in personal confidence, and is not assignable, so that, even if good as a license, the plaintiff still had no interest that he could sell and transfer to a purchaser.

3. The defendant, by forbidding the sale of the rye and claiming it as his own, revoked the license, as he had a right to do, and thus put an end to any rights the plaintiff had under claim of license.

VI. The testimony given by plaintiff that the defendant assisted to put in the rye in the fall of 1861, and that in the spring of 1862, before the vendue, the defendant had spoken of the rye as plaintiff's, was introduced to corroborate the testimony of plaintiff that his version of the agreement of March, 1861, was correct, and to show that the defendant so understood it a short time before he forbade the sale and claimed the rye as his; and also to have a bearing upon the question of malice, and not for the purpose of proving a new agreement made after March, 1861.

1. The plaintiff, when testifying as a witness, did not testify to any new agreement, but in his testimony expressly claimed the rye and these privileges by the agreement of March, 1861.

2. These acts do not prove a new contract; the most that they show is, that the defendant supposed that, by the agreement of letting, March, 1861, the plaintiff had the right to put in rye, and that it belonged to him by that agreement. This was done and said by defendant before he consulted counsel and was advised as to his legal rights.

3. The consent of defendant that plaintiff could sow the rye, so far as such consent can be drawn from his helping plaintiff prepare the ground for the sowing of the rye, and knowing that the plaintiff was sowing the rye, at most, only amounts to a parol license, and could be revoked at any time.

4. It was not an agreement, also for the reason, that there was no consideration to support it; none was proven. The rent reserved to be paid by the agreement of March, was not a consideration for a new agreement; that rent the plaintiff had already agreed to pay, and was the consideration of the agreement of March; it was a past consideration, and it does not appear that this rent had not been paid prior to this time.

5. If a new agreement was then made it was by parol, and being for an interest in real estate, it was void.

6. The plaintiff alleging a new agreement, it was for him to prove a valid agreement, as to consideration and all other things requisite to make out a valid agreement. This he failed to do.

7. In regard to the slat-wood, the privilege was to have it off the farm; the only fair and reasonable construction of this privilege is, that the plaintiff was to have the right to cut slat-wood from the farm; the privilege was general and not confined to slat-wood then cut.

The case was tried on the part of the plaintiff upon the theory, that the plaintiff had the right to the growing crops and the other privileges, by the agreement of March, 1861, and no mention was made on the trial of any new agreement, and no new agreement was proven.

VII. For the above reasons, when plaintiff rested he had not made out any title to the rye, and the evidence showed the rye belonged to the defendant, and the court should have granted the defendant's motion, then made, to nonsuit the plaintiff and dismiss the complaint.

VIII. The words spoken by the defendant were spoken in pursuance of a claim of title, for which he not only had some ground, but strong ground, and not for the purpose of injuring the plaintiff.

1. The defendant had consulted counsel as to his rights, by whom he was advised to attend the vendue and forbid the sale, in pursuance of which advice he did attend and speak the words complained of.

2. He only said: "I forbid selling the rye, it is mine." He did not repeat it, or do any other act to prevent bidding. He only did what was necessary to protect what he had been advised and believed to be his rights.

3. The whole case shows, that the defendant had reasonable grounds to believe that the growing rye belonged to him, and that he had a right to give notice of his claim, and it was his duty to do so.

It is difficult to see how the neglect by defendant, when he forbid the sale, to add that he had consulted counsel, and was acting under advice of counsel, was a want of good faith or showed malice.

4. There is no evidence in the case to show that he had any other object in forbidding the sale.

5. The fact that he had spoken of the growing rye before the sale as the rye of the plaintiff, does not show bad faith or malice in forbidding the sale; this was said before he had been advised of his rights.

6. The questions of law above discussed, sufficiently show that the defendant had some ground for the claim he asserted, and reason to believe it true.

IX. In order to maintain an action for slander of title, three things are necessary, and must be proved by the plaintiff: First, that the words are false; second, they must work an injury to the plaintiff in respect to his title; and, third, they must be malicious, that is, they must be intended to injure the plaintiff. (*Kendall* v. *Stone*, 2 Sandf. 269.)

It is submitted that neither of these requisites are established in this case.

If an action can be maintained under the circumstances in this case, then no one is safe in giving notice of a claim which he honestly may think he has, to protect the rights he may have.

X. If the defendant had some ground for the claim he

asserted, he is not responsible, and the action cannot be maintained. (*Baily* v. *Dean*, 5 Barb. 297; *Kendall* v. *Stone*, 2 Sandf. 269; Starkie on Slander, 202, 203.)

In *Baily* v. *Dean*, at page 301, it is said: "If there be some ground for the claim, the cases all agree that the action cannot be sustained, provided that the assertion is in pursuance of such claim."

XI. The court erred in not granting the motion of defendant at the close of the case, to nonsuit the plaintiff; there was no disputed question to submit.

XII. There is not sufficient evidence to sustain the verdict, and for this reason, also, the judgment should be reversed, and a new trial granted.

*R. E. Andrews*, for the respondent.

I. Every element necessary to establish a cause of action existed in this case — *i. e.*, falsity, injury and malice.

II. Falsity, because the plaintiff was the owner of the rye.

1. Conceding that the original lease was void so far as it was a leasing of land for a longer period than one year. Yet there was a valid leasing for one year for a price which, by the terms of the lease, was greater than according to the price agreed upon between the parties would be the price for the year, and that excess was the price of the privilege of sowing the farm to rye in the fall of 1861, and reaping it in the fall of 1862, with the other privileges to be enjoyed by the plaintiff after the expiration of the year.

In this condition of things, the plaintiff, with the knowledge, consent and assistance of the defendant, sowed the rye in the fall of 1861, and the defendant subsequently spoke of it and treated it as plaintiff's rye.

These transactions, occurring in the fall of 1861, and within one year before the time for reaping the rye, constituted a valid lease or agreement, renewing and extending the original lease or agreement, and rendering that which before was in part void, valid in all things, and as effectual as if in writing.

The title to the rye, with the right to reap it, etc., thus became vested and complete.

2. The slander uttered in this case was so uttered on the 10th day of March, 1862, before the time when even the defendant claims that the lease and right of the plaintiff expired.

In any view of the case, the rye was therefore then the property of the plaintiff.

3. The rye crop having been put in with the knowledge, and by the consent and assistance, of the defendant, and being acknowledged by him to belong to the plaintiff, the same thereby upon the principle of estoppel (independent of the implied contract and extension of lease) became the property of the plaintiff.

The same principle was maintained in *Dewey* v. *Bordwell*, 9 Wend. 67; 1 Phil. on Ev. (Edwards' ed.) 464 and n. 1, p. 454.

4. Whether the right to slat-wood was or was not carried by the contract of hiring, is not material; because the suit was brought for slander of plaintiff's title to a crop of rye, and not to slat-wood. Besides, it does not appear whether the slat-wood was already cut and dried, or was standing.

5. The same may be said in regard to the privilege of having the use of the barn and press on the farm to press the straw with. Besides, the implied extension of the term of the parol lease arising from the circumstances under which the rye was sown, would carry with it all these privileges as part of the rights and premises originally leased or intended so to be.

III. Injury. This was fully and undeniably established. This was not controverted upon the trial, nor did the defendant ever make any point that it was not, except upon the alleged ground that the rye did not belong to the plaintiff.

IV. Malice. This was a question of fact, and fully sustained by the evidence.

V. No other points were raised on the trial or at General Term.

VI. On the argument of this cause the appellant can raise no question except the question as to the validity of the con-

tract of leasing, because no other was raised on the trial, and it is submitted that that question is fully met.

He can raise no question on the argument here, under the general exception in the case, to the denial of the nonsuit.

Because, if there was any defect in the plaintiff's case, the defendant was bound to point it out, in order that it might be supplied.

WOODRUFF, J.   Three questions are involved in the controversy between these parties: First, will an action lie for slander of the plaintiff's title?   Second, was there sufficient proof to warrant the submission to the jury of the question, whether the plaintiff had title to the rye in respect of which the alleged slander was uttered, or in other words, were the words false?   Third, was the alleged slander uttered maliciously?

If these questions are all answered affirmatively, it is not claimed that the plaintiff was not entitled to recover the damages which the jury by their verdict have found in his favor.

The plaintiff having hired the defendant's farm from April 1, 1861, to the 1st of April, 1862, had, in the fall of 1861, sown rye, and he claimed that the crop was his; that he had the privilege of harvesting the rye, and of using the hay-press to press the straw, and gathering from the farm slat-wood wherewith to inclose or bind the straw when pressed.

On the 10th of March, in pursuance of previous notice, the plaintiff had an auction upon the premises, at which he put up the growing rye for sale, and sold it for $381.87.

The alleged slander consisted in the public declaration made by the defendant at the auction sale, that he forbade the sale of the rye, and that the rye was his.   By reason of which the plaintiff alleges the rye was sold for a less sum than its real value, and that he thereby sustained damage. For that the jury found a verdict for the plaintiff of $60.

1. I perceive no legal impediment to the maintenance of an action for falsely and maliciously asserting title to personal property exposed by another for sale, in order to prevent persons present from bidding or purchasing.

Cases of slander of title, most frequently arising, relate to the title to real estate or leasehold interests therein; but there is no difference in the principle or liability therefor, whether the property referred to be real or personal. On this point I concur in the conclusion of the chief judge, that the action may be sustained.

2. On the question whether the plaintiff or the defendant in fact showed title to the rye, or, in another form, whether the declaration of the defendant that the rye was his, was false, I think it is not accurate nor at all warranted by the proofs to regard the property put up at the auction, as the property in the rye for any purpose for which a purchaser might make it useful during the twenty days only which would elapse before the 1st of April (when the term of the plaintiff's hiring would expire), — whether as pasture or otherwise, snow being then on the ground, and the rye itself, or so much of the growth as had sprung up the previous fall being of very little if of any value, unless permitted to mature and be harvested in the summer or fall following.

Palpably, it was the future crop which was the subject of the auction sale; it was that in which the plaintiff claimed title; it was that for which the bidders offered, and it was that to which the words spoken had the plainest reference, and to that the title of the plaintiff was injured, and by injury to that, he sustained damage. It was obviously that which was sold for $381.87, and not any mere right to the pasture or other use of the rye fields, for twenty days in March. The jury could not have found that, for injury to the title to that twenty days' pasture, the plaintiff sustained damage to $60 over and above the sum bidden by the purchaser.

Whether the defendant's assertion of title was true or false, depended upon the conclusion which the jury might draw from conflicting testimony.

There was testimony that, upon the hiring for the year, from April 1st, 1861 to April 1st, 1862, the defendant assured the plaintiff that he might sow rye in the fall and harvest it, etc., in the summer or fall of 1862; and, whatever objection may be urged to the want of binding force of such a parol

assurance under the statute of frauds, it was not irrelevant to the inquiry, whether the acts and declarations of the defendant, in the fall of 1861, did not amount to a then binding contract, under which the plaintiff was entitled to the rye, and to the privilege of harvesting it within one year next ensuing, *i. e.*, in the summer or fall following. And on that subject there was evidence tending to show, that in the fall of 1861, the defendant assisted the plaintiff in preparing the ground for rye, and encouraged the plaintiff to sow it, and that, as a part of the transaction, which of itself would constitute further consideration for the privilege of harvesting the rye, the plaintiff consented to and did put into the ground for the defendant his timothy seed, for the permanent improvement of the farm. Besides this, the plaintiff's witnesses showed repeated declarations of the defendant, prior to the auction, to the effect, or in substance, that it was the plaintiff's rye.

From all the testimony it was competent for the jury to infer that there was, between the plaintiff and the defendant when the rye and the timothy seed was sown, a full understanding that the rye produced was the property of the plaintiff, and that he should have the privilege of harvesting the same.

An arrangement, then, made to that effect or mutually affirmed at that time, in faith whereof the plaintiff sowed the rye, and sowed also for the defendant his timothy seed, would not be invalid under the statute of frauds. And, therefore, a finding of the jury that the rye was the plaintiff's rye, is not without evidence. Such a finding involves the conclusion, that the declaration of the defendant at the auction that the rye was his, was not true. It would not be difficult to suggest, moreover, equitable grounds, plausible at least, for insisting that, after all that had transpired, the defendant could not be permitted to hinder or prevent the harvesting of the rye, which the plaintiff had thus been induced to sow.

3. It is, however, not enough that the words spoken were injurious, and were untrue, it must also be shown that they were malicious.

VOL. IV.     52

It is entirely clear, that if a person have, or believes that he has, a claim to property offered for sale to third persons, and in order to prevent their purchasing, he in good faith discloses his claim according to its true import, no action will lie against him. In such case he does nothing more than it is his right and his duty to proposed purchasers to do, if he would protect his claim. His silence on such an occasion, and his omission to give warning, would operate to estop him to assert the right which he believes he has to the property. The law does not require parties to forbear asserting their claim at the peril of an action for slander. Nor does it place a party who acts in good faith, in the alternative of being estopped, by neglecting to give notice if he is silent, or of being liable to damages if he speaks, and his claim proves to be invalid.

It must, therefore, appear, that he acted with malice, in asserting that he had title.

And here, also, the question before us is, was there in this case, evidence which made it proper to submit the question of malice to the jury? which is in effect the question whether the defendant acted simply from a desire to protect what he deemed his own rights, by giving such notice of his claims to bidders that should save him from the subsequent imputation of having, by his silence, permitted them to buy in ignorance thereof, or, by estoppel, precluded himself from thereafter alleging his claim against the purchaser.

There was evidence that he acted under the advice of counsel. If it had clearly appeared that he had truthfully disclosed to his counsel all the material facts within his knowledge, and that they advised him therefore that he had title to the rye, and believing that, and on their advice, he gave the notice, this would repel all idea of malice. Cases of prosecution, under the advice of counsel, under like full disclosure of all the facts, present a similar question, where an action in the case charging the prosecution to have been malicious, is brought, where acting in good faith, under the advice of counsel, is deemed a protection.

Here, the repeated admissions of the defendant, testified

to by several witnesses, tended not only to show that he had no title, but that he knew that he had no title to the rye, and if the jury believed these witnesses, there was some ground for the inference that knowing he had no title, he acted with malice in asserting that he had.

And again, if the jury believed the plaintiff's witnesses, and the testimony tending to establish the plaintiff's right to harvest the rye, they must have believed that the defendant did not make a truthful disclosure of all the facts within his knowledge, when he took the advice of counsel. Indeed the plaintiff himself testified, that he made to his counsel the same statement which was embodied in his own testimony at the trial, and that statement was greatly in conflict with what was testified to by others, in particulars necessarily in his personal knowledge, and in marked contradiction of the admissions several times made by him, as testified to.

Although the evidence of malice, as it appears in the printed case, is not very strong, and might incline me to doubt whether the plaintiff had any other purpose than a perfectly legal and proper one, viz., to notify bidders that he should insist upon a claim which he believed he had, and so induce them to ascertain all the facts before they took the risk of the purchase, still there was evidence as already seen, tending to the opposite conclusion. And it is, I think, entirely clear that it was proper to submit that question to the jury.

The charge of the court to the jury, is not contained in the case. We must assume it to have been satisfactory. No doubt it correctly stated to the jury the rules of law by which they must be governed, with all proper statement of the defendant's right, if acting in good faith, to protect his supposed claim, by giving notice thereof. Assuming the instructions to the jury to have been correct, they must have found that the defendant spoke the words; that they were false; that they were spoken maliciously, and that the plaintiff sustained thereby the damages awarded to him by their verdict.

We cannot say that there was not evidence in support of these findings, and there was, therefore, no error in law which

justifies any reversal in this court. The judgment should, for these reasons, be affirmed.

GROVER, MASON, CLERKE, MILLER, and DWIGHT, JJ., concurred in affirming, on the grounds stated by WOODRUFF, J.

Judgment affirmed, with costs.